IVES ICE CREAM CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 12755.   Promulgated February 12, 1929.

*C. H. Preston, C. P. A.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

OPINION.

LITTLETON : The only dispute between the parties is the amount of profit realized by the petitioner in the disposition of certain motor trucks, the Commissioner having determined a profit from this source of $2,228.94, whereas the petitioner reported a profit of only $1,222.18. The parties apparently are agreed on the adjusted cost which the Commissioner determined on all trucks disposed of, and are in disagreement only as to whether the credits allowed of $1,800 and $1,900, as the trade-in values of certain used trucks, represent the sale price from which their adjusted cost should be deducted in order to determine the profit realized on the transaction.

The question, then, is whether the full credit allowances are to be recognized as the consideration received for the trucks traded in. The greater part of the evidence is directed to the proposition that a discount was allowed the petitioner on the new trucks acquired by allowing a greater credit for the old trucks than their true market value, and that the purported consideration for the old trucks should be reduced accordingly. In support of this contention with respect to the transaction where a credit allowance of $1,800 was made, the salesman for the company which sold the trucks to the petitioner and likewise acquired the old trucks, testified that the sales price of the new trucks for cash to a purchaser using five or more trucks would have been 20 per cent less than the list price. He also testified that the fair market value of the two old trucks was from $300 to $500 each. With respect to the transaction wherein the credit allowance of $1,900 was made, the same witness testified that the discount on the new trucks then acquired (if the transaction had been with a cash purchaser situated as the petitioner) would have been

15 per cent less than the price at which they were billed to the petitioner. Another witness, who had been selling trucks since 1913 and who was with the H. E. Wilcox Motor Co. when the transactions in question took place, testified that purchasers of trucks for cash situated as the petitioner would ordinarily receive what is known to this business as the national users' discount and that this would be from 10 to 20 per cent. He further testified that the following procedure was followed where old trucks were being traded in:

Well, we would usually go out and appraise the truck and you would figure about what you could get for that truck, actual cash value, and to that you would add the discount that you thought the man was entitled to on fleet owner's discount; in this particular case there has been no discount deducted from those invoices, and while I did not make the discount it looks apparent to me that it made a certain approximation of the cars, and added fifteen or twenty per cent of the list price of the chassis and added that to the trade-in.

The vice president of the petitioner (the man who handled the transactions for the petitioner) testified that when the new trucks were purchased it was considered that, in lieu of a discount, allowance was being made in the form of a greater trade-in value for the old trucks and that it would not have made a purchase of the new trucks on a cash basis at the list price, but would have paid approximately 15 per cent less than the price at which they were billed in the trade-in transactions. No evidence was offered as to the cash or fair market value of the old trucks involved in the transaction where a credit of $1,900 was received. On the basis of these discounts the witnesses testified that the fair market value of the new trucks was approximately 15 per cent less than the prices at which they were billed to petitioner.

But what may have been the fair market value of the old and/or new trucks, we do not regard as conclusive of the issue before us. That a person may be so fortunate as to dispose of something for more than it is worth or more than it would ordinarily sell for on the market would not in any way require that the gain from the transaction should be reduced on account of the excess price received. What gain may have been realized in a given sale or exchange has as a necessary incident in its determination the consideration received by the person who disposed of the article which was sold or exchanged, and it is immaterial what some one else may have been willing to have given for the same thing. Certainly, to the person who acquired the article and later disposed of it, the starting point in a determination of gain or loss would be the price or value given therefor. This is well illustrated by cases of the type at bar where a used article is disposed of and a new article of a similar type is acquired. In reality there are two transactions, one in which something is sold and another in which something is acquired. Taking

the position of the Wilcox Motor Co., with whom the petitioner made the deals in question, the cost of the old trucks would be the credit allowances given therefor, and if it should dispose of these trucks at less than the credit allowance there would, of course, be a deductible loss sustained. But in the case of the new trucks, the price at which they were billed to the petitioner, such amount being paid by cash and the credit allowance, would be includable in its gross income. Where the used trucks are disposed of in the same year in which the new trucks are sold, any excessive allowance or costs for old trucks would be reflected in the loss on their sale, which loss in turn would be deductible from the gross income in which was included the total selling price for new trucks, with any excess appertaining thereto. And even where the used trucks are not disposed of in the same year, and the dealer inventories his trucks on the basis of cost or market, whichever is lower, the excess allowance would effectually be used to reduce income for the year in which the old trucks were acquired by inventorying these old trucks at cost or market, whichever is lower. (See *Lord Motor Car Co.*, 5 B. T. A. 818.) The foregoing observations are, of course, made largely with respect to the dealer in trucks, but in the case of the purchaser and user of the trucks we fail to see where any hardship necessarily results from treating the entire allowance as the sale price of the old trucks and the price at which the new trucks were billed to him as the cost of the new trucks, since depreciation on the new trucks, which, in effect, is a gradual sale, would be deductible on the basis of the price at which the new cars were billed to him (which is what we understand the Commissioner has done) and in this manner the whole cost would be recovered as a reduction of income. Further, in the case of any future disposition of the new trucks, the higher cost, if such there was, would serve to reduce the amount of profit or increase the loss which would result therefrom.

By treating the transactions in question in the foregoing manner, any necessity for speculation as to any appreciation in value placed on the old trucks or as to discount from the list price of the new trucks is eliminated. We do not doubt, as witnesses for the petitioner testified, that a discount to cash purchasers situated as the petitioner was customarily allowed, nor do we have reason to doubt that a greater credit allowance was given for the old trucks, because at the same time new trucks were being acquired, but this is far from saying that the old trucks were sold for less than the credit allowance or that the new trucks were acquired for less than the price at which they were billed to the petitioner. The facts are that the old trucks were traded in and credit memoranda issued to the petitioner in the amounts which the Commissioner has considered as the selling price of the old trucks, and these credits were used in their entirety to re-

duce the price at which the new trucks were billed to the petitioner. In view of the foregoing, we consider that the Commissioner's determination of what constituted the selling price is correct and his action is accordingly sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

LANSDON, SMITH, PHILLIPS, GREEN, and MILLIKEN dissent.